UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


DAVID HOOTEN and
DONNA HOOTEN,

        Plaintiffs,

vs.                                              CIV 00-984 KBM/LCS

PROGRESSIVE CASUALTY
INSURANCE COMPANY,

        Defendant.


## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the parties' cross-motions for summary judgment on the "stacking" issue. *See Doc. 27 (Defendant), Doc. 23 (Plaintiffs).* Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment.

Plaintiffs own three cars that are insured with Defendant on a single policy. Their policy provides uninsured/underinsured motorists ("UM") coverage of $50,00 each person/$100,000 each accident. The Hootens contend that under New Mexico law they are entitled to "stack" their $50,000 UM coverage over the three cars and thus recover $150,000 (offset by the $25,000 already paid by Defendant). The insurer contends its policy is unambiguous and prohibits stacking. Having reviewed the motions, memoranda, and applicable law, I find that Plaintiffs's Motion for Summary Judgment on the stacking issue is well taken and should be granted.

## I.  Background

The accident that gave rise to this suit occurred in July 1997.  In December 1996, Mrs. Hooten signed an application for the policy at issue.  The application contains the following language:

> IMPORTANT:  I understand several options of Uninsured/ Underinsured Motorist Coverage are available.  My agent has explained these options.  The option selected *on this application* is the option I desire.

*Donna Hooten Aff., Exh. A (emphasis added).*  The application itself, however, does not set forth what options were available nor which option was selected by Mrs. Hooten.  Indeed, no document of record indicates the available options for UM coverage.

Only the Declarations page memorializes what type of UM coverage was chosen by Plaintiffs.  In computing the total amount of liability coverage, Plaintiffs were assessed separate premiums on each of the three vehicles according to the Declarations page.  There is no similar breakdown per car with regard to UM coverage.  Instead, the UM premium is listed only in the "total" column:

| Coverages/Limits | VEH #1 | VEH #2 | VEH #3 | TOTAL |
|---|---|---|---|---|
| (specified liability coverages) | 300 | 310 | 535 | 1, 145 |
| " | 29 | 37 | 26 | 92 |
| " | 75 | 120 | 155 | 350 |
| " | 104 | 308 | 411 | 823 |
|  |  |  |  |  |
| UM $50,000 each person - $100,000 each accident |  |  |  | 221 |
| UM property $10,000 Less $250 deductible |  |  |  | 96 |
| PREMIUM BY VEHICLE | 508 | 775 | 1127 |  |
| TOTAL PREMIUM POLICY (including $15 policy fee) | | | | 2742 |

The policy at issue was effective as of June 1997, and represented a change from Plaintiffs' prior policy that was effective January 1997. The January policy insured a total of four cars, not three. As with the June policy, the January policy charged $221 for part of the UM coverage.[1]

The policy itself is the only document that contains the "anti-stacking" language relied upon by Defendant Progressive:

> The Limit of Liability shown on the **Declarations Page** for the coverages [for uninsured/underinsured motorist benefits] is the most **we** will pay regardless of the number of:
> 1.  claims made;
> 2.  **covered vehicles**;
> 3.  **insured persons**;
> 4.  lawsuits brought; or
> 5.  vehicles involved in an **accident.**

*Policy at 17 (emphasis original).* Identical limiting language appears in the section of the policy covering medical payments. *Id. at 12.* Indeed, the same language also appears in the section of the policy covering liability to others. *Id. at 8.*

Mr. and Mrs. Hooten submitted affidavits in support of their motion. Both contend that contrary to the assertion contained in the signed application, Progressive did not explain options they had for UM coverage, and that the agent did not explain the policy they bought precludes stacking. The Hootens further assert that they did not learn of the concept of stacking until after the accident.

---

[1] The January policy insuring more cars, however, actually charged less for the UM property coverage ($77 as opposed to $96). Defendant does not explain the reason for the discrepancy, and the face of the Declarations page does not indicate that there was a rate increase in the six months between the two policies.

3

## II.  Analysis

New Mexico public policy favors stacking UM coverage to fully compensate those who are injured and without fault.  *See e.g., Jimenez v. Foundation Reserve Ins. Co., Inc.,* 107 N.M. 322, 324-25 (1988) (and cases discussed therein).  The fact that a policy contains unambiguous anti-stacking language is not determinative.  *Id.* at 324.  Rather, whether the insured paid "separate premiums" has evolved as a key factor in "single policy/multiple car" decisions.  *See e.g., Rodriguez v. Windsor Ins. Co.,* 118 N.M. 127 (1994) ("*Rodriguez*"); *Jimenez,* 107 N.M. at 324-26.  In the most recent applicable case – *Rodriguez* – the New Mexico Supreme Court recognized that to avoid stacking, insurance companies have tried "including anti-stacking clauses in their insurance policies and, more recently, premium structures for [UM] benefits in multi-car policies that purport to avoid a separate charge for the coverage with respect to each car." *Rodriguez*, 118 N.M. at 127.  Defendant Progressive has done both here.

If an insurer wants to limit the stacking of UM benefits, "it has an obligation to express clearly its intent not to allow stacking – to its agents who sell the policy and, more importantly, to the insured to whom it issues the agreements it prepared."  *Rodriguez,* 118 N.M. at 133.  "[T]he insurer has the responsibility of issuing an intelligible policy.  If the insurer issues an ambiguous policy, the ambiguities are construed against the insurer."  *Id.* at 131.  A policy is "ambiguous" if a "particular matter of coverage is not explicitly addressed by the policy."  *Ponder v. State Farm Mutual Automobile Ins. Co.,* 129 N.M. 698, ___, 12 P.3d 960, 965 (2000).  In determining whether an ambiguity exists under New Mexico law, extrinsic evidence can be considered.  *See id.* (including, for example, "premiums paid for insurance coverage, the circumstances surrounding the agreement, the conduct of the parties, and the oral expressions of the parties' intentions").

The *Rodriguez* decision set forth in dicta what would be necessary to enforce an insurer's anti-stacking clause. To immunize itself from stacking, an insurer must issue a policy that "plainly notifies" the insured that: (1) "only one premium has been charged for one [UM] insurance coverage," (2) the "coverage provides personal accident insurance that cannot be stacked regardless of the number of vehicles covered by the policy," and (3) the insured should "bear this in mind when purchasing insurance."[2] *Id.*

Defendant argues that it has met each of the three *Rodriguez* prongs. As have other judges in this district, in the absence of a controlling post-*Rodriguez* case from the New Mexico Supreme Court, I analyze the case before me using the factors identified in *Rodriguez.*[3] *See e.g.*

---

[2] The *Ramirez* court did provide some guidance by quoting language from an insurance policy held by an Oklahoma court to meet those criteria and insulate the insurer from stacking:

> The Oklahoma Supreme Court has held in some cases that Uninsured Motorist protection could be stacked, unlike liability coverages. This means in some instances the Uninsured Motorists limits could be multiplied by the number of vehicles that had premiums charged for that coverage. The Cimarron and Plains Insurance Companies charge only one premium for this coverage per policy regardless of the number of vehicles insured. The insurance companies intend that there be only one, single, Uninsured Motorists limit entitlement. You should keep this important information in mind when selecting the limits for this coverage.

*Id.* at n.10, quoting *Scott v. Cimarron Ins. Co.*, 774 P.2d 456, 456-57 (Okla.. 1978) (emphasis omitted).

[3] Defendant relies on *Shope v. State Farm Ins. Co.,* 122 N.M. 398, 925 P.2d 515 (1996), for the proposition that the anti-stacking provision is clear and unambiguous. However, the *Shope* court examined the language used and found it clear and unambiguous under Virginia, not New Mexico, law. Furthermore, the parties in *Shope* agreed that under Virginia law stacking was unavailable. *See Shope*, 122 N.M. at 399-400. Therefore, *Shope* is not controlling here. The other post-*Rodriguez* cases from New Mexico are equally unavailing. *Phoenix Indemnity Ins. Co. v. Pulis,* 129 N.M. 395 (2000), involved UM coverage and exclusions for certain classes of

*Allstate Ins. Co. v. Independent Appliance & Refrigeration Service, Inc.,* CIV 00-382 LCS/KBM *(Doc. 39)*; *Martinez v. Allstate Ins. Co.,* CIV 96-1031 MV/JHG *(Doc. 148)*; *Ashe v. First Nat'l Ins. Co. of America,* CIV 94-405 SC/DJS *(Doc. 19).*

I will assume that Progressive satisfies the first prong of *Rodriguez* because the Declarations page shows that only one premium was charged for UM coverage. As to the second and third prongs, however, I am constrained to find that Progressive failed to issue UM coverage that is "immune to stacking." *Rodriguez,* 118 N.M. at 133.

Here, as in the *Ashe* case from this district, the insurer issued a notice attempting to comply with *Rodriguez.* The *Ashe* insurer explained in the policy that New Mexico courts "have ruled that in cases of [UM] losses the 'stacking' of coverage is permissible." On cross-motions for summary judgment, however, the late District Judge Santiago A. Campos found that the anti-stacking language used by the insurer – "[t]his makes it clear that one [UM] limit applies regardless of the number of vehicles on your policy" – was "not a model of clarity." Judge Campos held that the policy language failed to meet *Rodriguez'* test for a "***truly*** unambiguous anti-stacking clause" because: it did not affirmatively state stacking is not permitted, did not explain what the new rate structure meant regarding stacking, and did not explain how the rate structure would affect the amount of coverage carried by the insured. *Ashe*, May 12, 1995 Unpublished Op. at 9.

It seems that Judge Campos focused on the potential for confusion by the insured. "A reasonable person attempting to understand the Notice might think that if the New Mexico courts

---

drivers. A New Mexico Court of Appeals decision, *Allstate Ins. Co. v. Perea,* 129 N.M. 364 (Ct. App. 2000)  involved the relationship between judicial stacking and arbitration awards.

have ruled that stacking is permissible, then there's nothing [the insurer] can do to change that."
*Ashe*, Unpublished Op. at 8.  Similarly, confusion may arise here where separate premiums are
assessed per vehicle as to liability for bodily injury, property damage and medical payment and yet
Progressive's policy purports to limit liability as to these damages using the <u>same</u> language relied
upon to preclude stacking of the UM benefits.  As the *Rodriguez* court emphasized,  because "the
insurer conceptualizes and drafts the contract," any limitations and exclusions cannot be
ambiguous and must be made clear in the policy documentation.  *Rodriguez*, 118 N.M. at 133.

Judge Campos likewise ruled that simply advising the insured to contact their agent if they
had questions was insufficient to notify insured to "bear the anti-stacking feature in mind when
purchasing insurance."        Progressive similarly relies on Mrs. Hooten's signature on the
application as certifying that the agent explained the UM options to the satisfaction of the insured.


Nevertheless, nothing on the face of the three documents – the application, the policy's
anti-stacking provision nor the Declaration page – approximates the language required by the
spirit of *Rodriguez* nor as straightforward as the quoted language from an Oklahoma case cited
with approval by the New Mexico Supreme Court.  Even taking together the three portions upon
which Defendant relies, nothing "plainly" notifies Plaintiffs that Defendant's UM rate is structured
this way for a reason, the consequences of that rate structure, and what options are available to
avoid those consequences if the insured so desires.  Clearly, this is the type of notification
contemplated under *Rodriguez.*  I find the omissions here virtually indistinguishable from those
Judge Campos found deficient in *Ashe*, and that the same result is warranted.

Finally, under New Mexico law, it is immaterial whether the particular insured actually understood the stacking of coverage benefits.[4]  Insurance contracts are reviewed for ambiguity based on the perspective of a "hypothetical reasonable insured."  *E.g., Phoenix,* 129 N.M. at ___; *Rodriguez,* 118 N.M. at 130.   I find that a reasonable insured could not appreciate that certain portions of the three separate documents were critical to "stacking," as well as understand the significance of the relationship between those portions.  As *Rodriguez* noted, "[n]ot many people who purchase automobile insurance comprehend esoteric legal and insurance concepts such as stacking."  *Id.* at 130-31.  When an insurer drafts its policy, it must do so anticipating how the language is understood by the ordinary, untrained person.  *Id.*, citing 13 John A. Appleton & Jean Appleton, *Insurance Law and Practice* § 7386 at 159 (1976).

Considering the application, Declarations page, and policy together, I find the Progressive policy does not satisfy the dictates of *Rodriguez.*  Accordingly, Plaintiffs are entitled to stack their UM benefits.  In light of this finding, it is unnecessary to address Plaintiffs' alternative argument that Defendant's policy is void because it failed to obtain permission from the Superintendent of Insurance to include anti-stacking language.

Wherefore,

---

[4]  Plaintiffs' affidavits assert that no one explained: (1) what UM options they may have had, *or* (2) what stacking is, *or* (3) that the policy precludes "stacking."  Defendant says it "disputes" the "options" part of the assertion, but it does not submit affidavits or other testamentary materials to create a dispute.  Instead, it is arguing that the "I understand the options" clause of the application contradicts their affidavits and that had Plaintiffs elected the option of rejecting UM coverage, the rejection would have been memorialized by a separate document.  Nowhere does Defendant challenge the other two assertions that no one explained what stacking is and that the policy precludes it.  *See* FED. R. CIV. P. 56(e).  Because I find that the language of the documents must be viewed from the perspective of the reasonable insured, any disputed fact as to the insured's understanding cannot be seen as material.

**IT IS ORDERED THAT** Defendant's cross-motion for summary judgment *(Doc. 27)* is

DENIED and Plaintiff's motion for summary judgment on the stacking issue *(Doc. 23)* is

GRANTED.

_____
UNITED STATES MAGISTRATE JUDGE